**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Northern Division*

|  |  |  |
|---|---|---|
| **BRIAN ANDERSON,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: WDQ-11-1188 |
| **RELIANCE STANDARD LIFE INSURANCE CO.,** | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

In this suit, brought under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 ("ERISA"), Plaintiff Brian Anderson filed a Motion to Compel Discovery from Defendant Reliance Standard Life Insurance Co., pursuant to Fed. R. Civ. P. 37, and a Memorandum of Points and Authorities in Support of Plaintiff's Motion to Compel Discovery. ECF Nos. 10 & 10-1. I denied Plaintiff's motion without prejudice to refiling after the parties met and conferred and made a good faith effort to resolve their disputes without the Court's intervention. Oct. 11, 2011 Mem. & Order, ECF No. 12. The parties met as directed, resolving a number of disputes, and thereafter Plaintiff submitted a spreadsheet of the remaining disputes, in which Plaintiff and Defendant each made their arguments, in compliance with my October 11, 2011 Order.[1]

---

[1] Plaintiff emailed the spreadsheet to my Chambers, as directed, rather than submitting it via CM-ECF. The spreadsheet, which now includes the Court's rulings as well as the parties' arguments, is attached hereto as Exhibit A.

The remaining disputes concern the discovery Plaintiff sought in Interrogatories Nos. 2, 4–6, and 11, and Document Requests Nos. 1, 8, 10, and 12.  In Interrogatory No. 2, Plaintiff sought "the total number of disability claims referred to the Matrix Absence Management for the performance of disability claim administration by Reliance Standard Life Insurance company during the years 2007 – current inclusive listed on an annual basis" and the number of findings of disability each year."  Pl.'s Mem. 11.  Interrogatories Nos. 4 and 5 requested similar information with regard to referrals to National Medical Evaluation Services and MES Solutions, respectively.  *Id.* at 12, 23.  Interrogatory No. 6 asked Defendant to "provide a total of all monies paid to MES Solutions listed on an annual basis during years 2007 – current inclusive."  *Id.* at 27-28.  Document Request No. 1 was for documents "evidencing relationship and or control of the corporate entities Reliance Standard Insurance Company and Matrix Absence Management and their parent corporation, Delphi Group."  *Id.* at 36.  Document Requests Nos. 8 and 10 asked for "IRS Form 1099s issued to MLS National Medical Evaluation Services and/or its parent company MLS Group of Companies, Inc. . . . and First Advantage Investigative Services for 2007 – current inclusive."[2]  *Id.* at 39.

The dispute resulting from this group of interrogatories and document requests concerns the availability to an ERISA plaintiff of discovery relevant to an alleged conflict of interest and its effects on the eligibility determination, as well as the scope of any permissible discovery.  As the parties note, *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008), changed the dynamic in evaluation of ERISA cases.  There, the Supreme Court held that when "the entity that administers the [employee benefit] plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket[,]

---

[2] Interrogatory No. 11 and Document Request No. 12 are discussed *infra*.

2

. . . this dual role creates a conflict of interest," and "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; . . . the significance of the factors will depend upon the circumstances of the particular case." *Id.* at 108. The Court emphasized that "for ERISA purposes a conflict exists" nonetheless when "the plan administrator is not the employer itself but rather a professional insurance company." *Id.* at 114.

Although "*Glenn* unambiguously requires district courts to determine the likelihood that an administrator's conflict of interest affected its benefits decision," *Clark v. Unum Life Ins. Co. of Am.*, No. JKB-10-3107, 2011 WL 3204673, at *3 (D. Md. July 27, 2011), the issue of the permissibility and scope of discovery relating to an alleged conflict was not before the Supreme Court. The most recent Fourth Circuit opinion, which preceded *Glenn*, provided that "when a district court reviews a plan administrator's decision under a deferential standard, the district court is limited to the evidence that was before the plan administrator at the time of the decision." *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995) (citing *Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994)); *see Bartel v. Sun Life Assurance Co. of Canada*, 536 F. Supp. 2d 623, 630 (D. Md. 2008) (quoting *Bernstein*, pre-*Glenn*). Yet, *Glenn* "may have opened the door to additional discovery under certain conditions," and post-*Glenn* Fourth Circuit opinions, as well as post-*Glenn* opinions in other circuits, "appear to acknowledge the relevance of extra-record evidence in determining the significance of a conflict." *Clark*, 2011 WL 3204673, at *2-3 (citing, *inter alia*, *Vaughan v. Celanese Americas Corp.*, 339 Fed. App'x 320, 328 (4th Cir. 2009) (noting with approval that district court held evidentiary hearing); *Champion v. Black & Decker (U.S.), Inc.*, 550 F.3d 353,

362 (4th Cir. 2008) (noting that the court could "find no evidence" to magnify the conflict and that the plaintiff "provide[d] no contrary evidence")).

This Court recently explored this exact discovery issue in *Clark*, 2011 WL 3204673, where the plaintiff "sough discovery of information regarding Defendant's claims review process, the compensation structure of its employees and consultants, and statistical data regarding findings of disability by Defendant's consulting physicians." *Id.* at *1. It held that "*Glenn* created an exception to the general rule (still otherwise in force) that extra-record discovery is unavailable to ERISA plaintiffs." *Id.* at *3. This Court further held: "Such discovery is available when an administrator has a structural conflict of interest and information not contained in the record is necessary to enable the court to determine the likelihood that the conflict influenced the particular benefits decision at issue." *Id.* Accord *Worsley v. Aetna Life Ins. Co.*, 780 F. Supp. 2d 397, 408 (W.D.N.C. 2011) ("The Court thus finds it appropriate to consider the very limited evidence presented by Aetna regarding the procedural safeguards it has implemented to ensure that its inherent structural conflict of interest does not dead to biased claim determinations."); *McDonough v. Aetna Life Ins. Co.*, No. 3:09cv00071, 2011 WL 1418878 (W.D. Va. Apr. 8, 2010) ("[B]ecause the conflict of interest must be evaluated to determine what role it should play in a reviewing court's analysis of a fiduciary's decision, . . . limited discovery on the nature of the conflict in this case is not 'clearly erroneous and contrary to law.'") (quoting Fed. R. Civ. P. 72(a)); *Catledge v. Aetna Life Ins. Co.*, 594 F. Supp. 2d 610 (D.S.C. 2009) ("In light of the paucity of evidence as to the basis of Aetna's 'intent' determination, and comments in *Glenn* regarding matters which might be considered in weighing the impact of a conflict of interest, this court allowed limited discovery in this matter in the form

of two depositions of the key individuals involved in the decisionmaking process. The depositions were further limited as to subject matter.").

Additionally, this Court observed that the scope of such discovery should be narrow enough to "avoid[] 'near universal review by judges *de novo—i.e.*, without deference—of the lion's share of ERISA plan claims denials,'" yet broad enough to "avoid[] 'special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict.'" *Clark*, 2011 WL 3204673, at \*4 (quoting *Glenn*, 554 U.S. at 116). This Court concluded, *id.*:

> [T]he best way to accommodate both of these interests is to carefully scrutinize the relevance and necessity of Plaintiff's proposed extra-record discovery at the outset, by determining whether or not the administrative record contains enough information to allow the court to properly weigh Defendant's admitted conflict of interest. If it does, then no discovery will be necessary because information beyond the record would not be relevant. If, however, the court determines that additional information is needed, then discovery will be allowed to proceed on the specific issue of the effect of Defendant's conflict on its benefits decision in this case.

The Court directed the parties "to file supplemental memoranda addressing the following question: *Is the information already contained in the administrative record sufficient to determine the extent, if any, to which Defendant's conflict of interest influenced its decision to deny Plaintiff's claim for long-term disability benefits?*" *Id.* The defendant identified evidence in the administrative record that supported its position that "its admitted conflict of interest was 'neutralized' . . . by the thoroughness of its investigation of Plaintiff's claim and appeal"; the plaintiff made only "generalized allegations" without identifying any evidence of bias. *Id.* at \*6. After receiving the supplemental briefing, the Court concluded that "the administrative record in th[e] case contain[ed] enough information to allow the Court to determine the likelihood that Defendant's conflict of interest (i.e., its financial incentive to avoid paying claims) improperly

influenced its decision to terminate Plaintiff's LTD benefits," and on that basis, denied the plaintiff's motion to compel. *Id.* at *6.

Here, Plaintiff seeks "disability benefits payments under The Apptis, Inc. Group Long Term Disability Plan which is insured by The Reliance Standard Life Insurance Company . . . and administered by . . . Matrix Absence Management, Inc." Pl.'s Mem. 1. In his Memorandum of Points and Authorities in Support of Plaintiff's Motion to Compel Discovery,[3] Plaintiff alleges a complicated web of relationships among the plan administrator, the insurer, and various medical providers. *Id.* at 11-37. Specifically, according to Plaintiff, "Matrix Absence Management, Inc. is a sister company of Reliance Standard Insurance Company and a fellow subsidiary of Delphi Financial Group," such that they "are working toward the same end." *Id.* at 11. He claims that "the performance of Matrix Absence Management is influenced by the Defendant." *Id*. at 37. Plaintiff further asserts that the MLS Group of Companies, including its subsidiary National Medical Evaluation Services, to whom Defendant Reliance Standard Insurance Co. refers claims, receives a significant percentage of its work from insurance companies and "is influenced by the monies paid by the insurance industry." *Id.* at 13-14. Additionally, Plaintiff alleges that "MES Solutions [an IME organization] was acquired by Exam Works, Inc., a company which owns other similar . . . cost control business including Health Cost Management, Inc[.], Roy Medical Consultants, Inc., Verity Medical, Inc., among others." *Id*. at 26. Plaintiff identifies the relationship between independent medical evaluators and insurance companies as another conflict of interest, *id*. at 15-23, noting that "[i]t has long been questioned how IME facilities can guarantee an impartial examination when the insurer is paying

---

[3] Plaintiff's Memorandum was unnecessarily long, often citing to unhelpful authority from other courts but ignoring authority from this Court. It appeared as though much of the Memorandum was cut and pasted from filings in other cases.

the bill when the insurer is seeking to minimize its exposure and can take their business elsewhere," *id.* at 22.

Plaintiff insists that if "solely . . . the claim file contents" were considered to assess the alleged conflicts of interest and their effects on the eligibility determination, "such information could never [be] discerned." Pl.'s Mem. 4.  He alleges: "Given the administrator's sole control over the claim file, it is certain that *no such information would ever be disclosed* for a claim beneficiary to bring a merit[-]worthy challenge concerning underlying factors which illustrate the nature of the conflict of interest inherent in such claims decision." *Id.* at 4-5 (emphasis added).  This is strong language, considering that Plaintiff's counsel was counsel for the plaintiff in *Clark*,[4] where the Court concluded that the conflict of interest determination *could* be made from the administrative record alone. *See Clark*, 2011 WL 3204673, at *6.  Nonetheless, it appears that, in this case, with the possible multi-tiered and interwoven conflicts described above, certain limited additional discovery may shed light on the alleged conflicts of interest and their effects.  The Court's ruling on the parameters of this discovery appears at the conclusion of this Memorandum Opinion and Order and on the attached spreadsheet, which is attached as Exhibit A and incorporated herein by reference.

Additionally, the Court reviewed the arguments presented by counsel as to Interrogatory No. 11 and Document Request No. 12.  In Interrogatory No. 11, Plaintiff asked Defendant to "identify any and all internal guidelines, policies, procedures, claims handling manuals," and similar documents "concerning the interpretation and/or administration of the policy issued in this case that are not contained in the claim record whether relied upon or not during the

---

[4] Given Plaintiff's counsel's role in *Clark*, it is all the more unusual that he failed to discuss *Clark* in any meaningful way in Plaintiff's Memorandum, especially because *Clark* is far more helpful to resolving this issue than the cases from other jurisdictions that Plaintiff cited.

administration of the subject disability claim," and to state why each document was or was not followed. *Id.* at 30-31. Defendant offered to produce its claims manual under a confidentiality agreement, but Plaintiff argued that "Defendant has no right to a confidentiality agreement." *See* Ex. A.  In Document Request No. 12, Plaintiff requested "[a]ny and all educational and/or training materials utilized for the investigation, evaluation, or review of disability insurance claims." *Id.* at 40.  Defendant asserted the attorney–client privilege and work product doctrine, but failed to particularize its objections in its in original response, in which it simply stated that it "object[ed] to plaintiff's request on the grounds it seeks documents and/or information protected by the attorney client privilege or attorney work product doctrine." Pl.'s Mot. to Compel Ex. 4, Resp. to Doc. Prod. Req. No. 12, ECF No. 10-6.  Moreover, in the spreadsheet the parties submitted with regard to their unresolved disputes, Defendant still did not particularize its objections, referring instead to its response to Interrogatory No. 11, in which it said that it "offered to produce its claims manual under confidentiality." *See* Ex. A.

Plaintiff responded that the fiduciary exception applied, such that "an ERISA fiduciary cannot assert the attorney-client privilege against a plan beneficiary about legal advice dealing with plan administration." Pl.'s Mem. 41.  Indeed, the Fourth Circuit concluded that "the fiduciary exception to attorney-client privilege extends to communications between an ERISA trustee and a plan attorney regarding plan administration," and that "there is no legitimate basis on which to distinguish between the two privileges in the application of the fiduciary exception in the ERISA context." *Solis v. Food Employers Labor Relations Ass'n*, 644 F.3d 221, 228, 233 (4th Cir. 2011). In any event, as this Court cautioned Defendant in its October 11, 2011 Memorandum and Order, "[o]bjections based on attorney-client privilege or the work product doctrine must be particularized, Fed. R. Civ. P. 26(b)(5), and accompanied by the information

that this Court's Discovery Guidelines 6 and 9.c require," and "[t]he Court may deem the failure to do so to be a waiver of the privilege or work product protection." Oct. 11, 2011 Mem. & Order 5 (citing *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 267 (D. Md. 2008)). As noted, Defendant did not particularize its claim of privilege, but rather offered to produce the manual under a confidentiality agreement. *See* Ex. A. Therefore, Defendant has waived attorney-client privilege and work product protection, but a confidentiality agreement may be appropriate.

Fed. R. Civ. P. 26(c)(1)(G) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that . . . confidential . . . commercial information not be revealed or be revealed only in a specified way." While Defendant has failed to make a particularized showing of good cause in this instance, I am satisfied that an insurance company's claims manual is the type of commercial information that warrants a confidentiality agreement when it is produced for discovery. Accordingly, I am ordering the parties to confer and prepare such a confidentiality order for my signature. *See* Loc. R. 104.13 (stating requirements of proposed confidentiality order). An example is included as Stipulated Order Regarding Confidentiality of Discovery Material and Inadvertent Disclosure of Privileged Material in Appendix D to the Local Rules of this Court.

In sum, certain limited extra-record discovery is appropriate in this case in response to Interrogatories Nos. 2 and 4–6, but not with regard to Document Requests Nos. 1, 8, and 10. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). The parameters of this discovery are outlined in the attached spreadsheet. Defendant shall provide its discovery responses within thirty (30) days of the date of this Memorandum Opinion & Order. Additionally, Defendant shall produce its claims manual

in response to Interrogatory No. 11 and Document Request No. 12, subject to a confidentiality agreement that shall be submitted to me to approve once the parties have signed it.

    So ordered.

Dated: <u>January 5, 2012</u>                                                 _____/S/_____
                                                                                          Paul W. Grimm
                                                                                          United States Magistrate Judge

lyb

Exhibit A:  *Anderson v. Reliance Standard Life Insurance Co.*, WDQ-11-1188, Discovery Dispute Spreadsheet

| Interrogatory/ RFPD No. | Plaintiff's explanation | Defendant's explanation | Ruling |
|---|---|---|---|
| Interrogatory No. 2 | Interrogatories directed to Reliance Standard Insurance Co. and not the Apptis Plan. Answer is insufficient. It is relevant to the conflict of interest question as the company involved does a large amount of business with the insurance industry and this business interest has the potential to influence the findings of the medical reports issued. This is demonstrated by the amount of money paid to the company and the results of the reviews. | Reliance Standard ("RSL") has fully responded. It stated that it referred no claims directly to Matrix. Matrix provided limited claim services per an agreement with the policyholder. RSL made the final decision on each claim. Matrix did not receive any money directly from RSL so plaintiff's stated basis does not apply. Regardless, RSL provided full information on the status of each claim under the policy it issued to Apptis. | The Defendant shall provide a complete and unevasive response to Interrogatory No. 2 but shall not be required to spend more than twenty (20) hours in manually reviewing its records in order to compute the requested information. |
| Interrogatory No. 4 | Same as above | RSL provided a full response, stating that no other Apptis claim was referred to this vendor. This compromise response was discussed with Mr. Elkind in advance but he apparently has decided that he wants information on all claims referred to this vendor under any policy. In *Clarke v. Unum Life Ins. Co*., 2011 U.S. Dist. LEXIS 110318 (D. Md. Sept. 27, 2011), the Court denied Mr. Elkind's motion to compel the same discovery, since there was no factual basis to infer that bias affected the outcome of that claim. The same is true here. | The Defendant shall provide a complete and unevasive response to Interrogatory No. 4 but shall not be required to spend more than twenty (20) hours in manually reviewing its records in order to compute the requested information. |

| | | | |
|---|---|---|---|
| Interrogatory No. 5 | Same as above | Same as above; however, RSL explained that one other Apptis claim was referred to this vendor and the amount of the payment was provided. | The Defendant shall provide a complete and unevasive response to Interrogatory No. 5 but shall not be required to spend more than twenty (20) hours in manually reviewing its records in order to compute the requested information. |
| Interrogatory No. 6 | Same as above | See above.  Additionally, the amount of payments to a vendor is not evidence of bias on the part of the defendant.  An ERISA defendant is not required to follow the opinion of the treating physician and there is no other way to obtain a medical opinion other than to pay someone for their time. | The Defendant shall provide a complete and unevasive response to Interrogatory No. 6 but shall not be required to spend more than twenty (20) hours[1] in manually reviewing its records in order to compute the requested information. |
| Interrogatory No. 11 | The law is clear that the Defendant has no right to a confidentiality agreement. | RSL offered to produce its claims manual under confidentiality.  Contrary to plaintiff's position, in *Weed v. Prudential Ins. Co. of Am.*, No. 08cv10969-NG, 2009 WL 2835207 (D. Mass. Aug. 28, 2009), the court ordered production of the manual under confidentiality.  *See also Palmiotti v. Metropolitan Life Ins. Co.*, No. 04 Civ. 718 (LTS), 2006 WL 510387 (S.D.N.Y. Mar. 1, 2006). | *See* January 5, 2012 Memorandum Opinion and Order 8-9. |

---

[1] To be clear, Defendant may spend up to twenty hours responding to Interrogatory No. 2, an additional twenty hours responding to Interrogatory No. 4, an additional twenty hours responding to Interrogatory No. 5, and an additional twenty hours responding to Interrogatory No. 6, for a possible total of eighty hours.

| RFPD No. 1 | See explanation for Interrogatory No. 1 | RSL has explained the relationship between the named entities. Only RSL is a fiduciary and it made the final claim decision. Broadly asking for any contracts or agreements between RSL, Matrix and Delphi is improper. There are none as it relates to plaintiff's claim for benefits. | These documents are unnecessary given the other discovery that the Court has ordered. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). |
|---|---|---|---|
| RFPD No. 8 | Same as above | See response re interrogatory no. 4. | These documents are unnecessary given the other discovery that the Court has ordered. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). |
| RFPD No. 10 | Same as above | First Advantage provided surveillance services. It did not provide opinions. Therefore, any amounts paid to it are even less relevant to the issue of whether RSL's decision was biased. See also responses re interrogatories 5 and 6. | These documents are unnecessary given the other discovery that the Court has ordered. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). |
| RFPD No. 12 | The law is clear that the Defendant has no right to a confidentiality agreement | See response re interrogatory 11. | *See* January 5, 2012 Memorandum Opinion and Order 8-9. |