IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

BRIAN ANDERSON,                          *

  Plaintiff,                   *

    v.               *       CIVIL NO.: WDQ-11-1188

THE RELIANCE STANDARD LIFE              *
INSURANCE COMPANY, *et al.*             *

  Defendants.                  *

            *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Brian Anderson sued The Reliance Standard Life Insurance

Company ("Reliance") and The Apptis, Inc. Long Term Disability

Plan (the "Plan") (collectively the "defendants") to reinstate

his Long Term Disability ("LTD") benefits under the Employee

Retirement Income Security Act of 1974 as amended ("ERISA").[1]

The defendants counterclaimed for overpayment.  Pending are

cross-motions for summary judgment and Anderson's motion for

leave to file a surreply.  For the following reasons Anderson's

motion to file a surreply will be granted.  Anderson's and the

defendants' motions for summary judgment will be granted in part

and denied in part.

---

[1] 29 U.S.C. § 1001 *et seq.*

I.    Background[2]

      A.    The Insurance Policy

      Effective January 1, 2003, Reliance issued Group Long Term

Disability Insurance Policy No. LTD 108402 to Apptis, Inc.

("Apptis").   AR1.   Under the Policy, Reliance promised to pay a

monthly benefit if an insured:

> (1)  is Totally Disabled as the result of a Sickness or
>      Injury covered by this Policy;
> (2)  is under the regular care of a Physician;
> (3)  has completed the Elimination Period; and
> (4)  submits satisfactory proof of Total Disability to
>      [Reliance].

AR20.   "Totally Disabled" and "Total Disability" mean:

> (1)  during the Elimination Period and for the first 24
>      months for which a Monthly Benefit is payable, an
>      Insured cannot perform the material duties of his/her
>      regular occupation; ...
> (2)  after a Monthly Benefit has been paid for 24 months,
>      an Insured cannot perform the material duties of any
>      occupation.  Any occupation is one that the Insured's
>      education, training or experience will reasonably
>      allow.   [Reliance] consider[s] the Insured Totally
>      Disabled if due to an Injury or Sickness he or she is
>      capable of only performing the material duties on a
>      part-time basis or part of the material duties on a
>      [f]ull-time basis.

AR12.  Reliance had "the right to have a Claimant interviewed

and/or examined: (1) physically; (2) psychologically; and/or (3)

psychiatrically; to determine the existence of any total

---

[2] On cross motions for summary judgment, "each motion [is]
considered individually, and the facts relevant to each [are]
viewed in the light most favorable to the non-movant."   *Mellen
v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003).   The facts are
drawn from the administrative record.

disability which is the basis for a claim." AR16. Reliance could use this right "as often as it is reasonably required while a claim is pending." *Id.*

Reliance was not required to pay benefits for Total Disability "caused by or contributed to by mental or nervous disorders"[3] for more than 24 months, unless the Insured is "in a Hospital or Institution at the end of the [24] month period." AR24. Similarly, benefits were limited to a total of 24 months "for all Total disabilities caused or contributed to by Chronic fatigue syndrome; or Environmental Allergic or Reactive Illness; or Self-Reported Conditions."[4] AR25.

The Monthly Benefit was defined as "60% of Covered Monthly Earnings."[5] AR9. The amount payable was the Monthly Benefit

---

[3] Mental or Nervous Disorders included conditions such as:
1) bipolar disorder (manic depressive syndrome);
2) schizophrenia;
3) delusional (paranoid) disorders;
4) psychotic disorders;
5) depressive disorders;
6) anxiety disorders;
7) somatoform disorders (psychosomatic illness);
8) eating disorders; or
9) mental illness.
AR24.

[4] Self-Reported Conditions were those that "when reported by the Insured's Physician, cannot be verified using generally accepted medical procedures and practices." AR25. These include "headaches, dizziness, fatigue, loss of energy, or pain." *Id.*

[5] Covered Monthly Earnings included salary, but not commission, overtime, bonus, or other special compensation. AR11. The maximum monthly benefit was $12,000. AR9.

less other benefits paid for the same Total Disability,

including disability benefits under the Social Security Act.

AR20.  If Reliance overpaid a benefit, it was entitled to

repayment.[6]  *Id.*

> The policy granted Reliance discretion:

> Reliance . . . shall serve as the claims review fiduciary
> with respect to the insurance policy and the Plan.  The
> claims review fiduciary has the discretionary authority to
> interpret the Plan and the insurance policy to determine
> eligibility for benefits.  Decisions by the claims review
> fiduciary shall be complete, final and binding on all
> parties.

AR16.

B.   Medical History

Beginning October 16, 2006, Anderson was employed as a Lead

Security Engineer at Apptis, with a monthly salary of $10,500.

AR2093.

On March 19, 2007, Anderson was in a motor vehicle accident

and admitted to the Anne Arundel Medical Center for emergency

treatment.  AR1874-75.  MRIs and a CT scan revealed small bulges

at L2-L3 and L3-L4, and a right foraminal disc protrusion at L4-

L5.  AR1397, 1399, 1402.  Anderson underwent numerous medical

procedures to treat the L4-L5 disc.  *See* AR1480-1503.

Because of continued problems at L4-L5, on April 7, 2008,

Anderson underwent a discogram.  AR1038.  After the discogram

---

[6] This could be in the form of a lump sum refund or reduced
Monthly Benefit.  AR20.

findings, on April 22, 2008, Anderson underwent a percutaneous diskectomy.  AR1036; *see* AR 1039.

Anderson's primary physician was Richard Bernstein, M.D. Bernstein reports indicate that Anderson suffered from low back pain and a herniated disc.  *See, e.g.*, AR923.

One of Anderson's treating physicians was pain specialist Steven Cohen, M.D.  Starting in 2007 and continuing through 2010, Anderson received lumbar epidural steroid injections from Cohen and others to treat the pain.  *See* AR186, 902, 1047, 2097, 2103.  On July 7, 2009, Cohen performed an intradiscal electrothermic annuloplasty ("IDET")[7] procedure.  On December 7, 2009, Cohen stated that pain is the limiting factor for Anderson's return to work, and "statistically, Mr. Anderson is not likely to return to work full time."  AR1456-57.

Anderson also received treatment from two mental health professionals.  Nancy Scholle, Ph.D. indicated that Anderson suffered from major depression, posttraumatic stress disorder, and psychological factors affected his medical condition. AR248.  Similarly, Gregory Fey, M.D. stated that Anderson suffered from major depressive disorder, posttraumatic stress

---

[7] An IDET procedure uses heat to cauterize pain receptors.  *See* Ari Ben-Yishay, M.D., *IDET: A New Procedure for Discogenic Back Pain Management*, spine-health, http://www.spine-health.com/treatment/back-surgery/idet-a-new-procedure-discogenic-back-pain-management (last accessed February 25, 2013).

disorder and pain. AR199-200. Fey indicated that Anderson's mental issues arise from his pain. *See, e.g.*, AR201.

As of September 9, 2010, Anderson was taking numerous medications, for pain and other ailments, including Lidoderm patches, Opana ER, Opana IR,[8] and morphine. AR 2112. That day, Bernstein noted that Anderson "continue[d] to have breakthrough pain, and requires opana IR up to 5 times per day."

C.   Claim History

On June 14, 2007, after receiving short-term disability benefits, Anderson applied for long-term disability benefits from Reliance, citing neck, back, and foot pain from the accident. AR2088-93. On June 21, 2007, Anderson's benefits were approved by Matrix Absence Management, Inc. ("Matrix"), Long Term Disability administrator related to Reliance. *See* AR1946-1950.

On May 2, 2007, Apptis provided to Matrix Anderson's job description:

> Monitor, evaluate, and maintain systems and procedures to protect the data systems and databases from unauthorized users. Identify potential threats and respond to reported security violations. Determine causes of security breaches and research, recommend, and implement changes to procedures to protect data from future violations. Assist in educating users on security procedures.

AR2047.

---

[8] The Opana drugs are narcotic pain relievers used for "around-the-clock treatment of pain." AR 1542.

On June 20, 2007, Anderson was assigned the Dictionary of Occupation Titles ("DOT") occupation of Computer Security Coordinator.[9]  AR1999.

On December 11, 2007, Matrix directed Anderson to apply for Social Security Disability ("SSD") benefits.  AR1209.  On December 22, 2007, Anderson signed a reimbursement agreement promising to repay to Reliance any overpayment of Long Term Disability benefits caused by his receipt of SSD benefits. AR1207; *see* AR20 (requiring reduction in LTD benefits if SSD award).

On May 29, 2009, David Lembach, M. Ed., LPC, CRC, CDMS, performed a vocational review, and determined that Anderson was

---

[9] The DOT gave the tasks of the Computer Security Coordinator as:
1. Confers with computer user department personnel and computer programmer . . . to plan data security for new or modified software, discussing issues, such as employee data access needs and risk of data loss or disclosure.
2. Reviews plan to ensure compatibility of planned security measures with establishment computer security system software.
3. Modifies security data files to incorporate new software security into establishment security software, using computer terminal, or meets with systems programmer . . . to request needed programming changes.
4. Enters commands into computer in attempt to circumvent new security measures to test system.
5. Reviews employee violations of security procedures recorded by computer and reports violations to user department managers or talks with employee to ensure that violation is not repeated.
6. Coordinates implementation of vendor-issued security software update.
7. Develops and writes computer security department policies and procedures.

AR1999.

qualified for his regular occupation as computer security coordinator as well as four other related occupations with sedentary exertion levels. AR228-29.

On August 11, 2009, Matrix informed Anderson that he continued to be eligible for Long Term Disability benefits, under the any occupation standard, until September 6, 2040, or "until [he] no longer [met] the provisions of [his] policy, whichever occur[red] first." AR206. When it advised Anderson, however, Matrix's claim notes indicated that less than sedentary restrictions were supported until September 17, 2009, two months after the IDET procedure. AR120. After Anderson's continued epidural steroid injections, Matrix postponed the supported date to December 31, 2009. AR124. However, Matrix was concerned that his "symptoms [were] not commensurate with work impairment." AR123. Accordingly Matrix requested updated medical information from Anderson. *See* AR125.

After its review, Matrix arranged for an independent medical examination ("IME") with Francisco Ward, D.O., through its vendor MLS National Medical Evaluation Services ("MLS"). AR840-42. On January 6, 2010, Ward reviewed Anderson's medical records, and examined him. AR820. Ward found that Anderson "had full cervical range of motion actively including sidebending, rotation, flexion and extension, glenohumeral joint motion was full actively [*sic*], including abduction, forward

8

flexion, internal and external rotation." *Id.* Ward also noted that Anderson's "[l]umbar range of motion was full including lumbar flexion and extension." *Id.*

Ward found that Anderson's subjective complaints "far exceed any objective evidence to collaborate them." AR821. He opined that Anderson's treatments and medication were "excessive, inappropriate, and without objective merit." AR822. Ward stated that Anderson's prognosis was "excellent" if he "stops obtaining additional treatment and gets weaned off of all his medications." *Id.* Ward stated that Anderson was capable of a Very Heavy[10] work exertion level. AR824.

Ward said he had examined Anderson from 1:30 to 2:30 p.m., and reviewed Anderson's medical files for an hour and a half before and half an hour after seeing Anderson. AR821. A private investigator hired by Matrix reported that Anderson arrived at Ward's office at 12:40 p.m., and he left at 1:45 p.m. AR176. Danielle Milo, a friend of Anderson, accompanied him to the appointment and stated that Dr. Ward arrived at 1:10 p.m. and left at 1:40 p.m. AR1718-19. Milo further stated that Ward "made it a specific point to tell us he had NOT read any of [Anderson's] medical records," and Anderson had significant difficulty during the physical exam. AR1719-20.

---

[10] Very Heavy is in excess of 100 pounds of force occasionally, in excess of 50 pounds of force frequently, or in excess of 20 pounds of force constantly. AR824.

On January 19, 2010,[11] Matrix informed Anderson that he did not meet the any-occupation definition of Total Disability and terminated his benefits effective January 18, 2010. AR97-101. The decision was entirely based on Ward's report. *Id.*

On April 24, 2010, Rick Parente, Ph.D., undertook a neurorehabilitation evaluation of Anderson and determined that he "will not be able to return to work in his former capacity" because of "physical and cognitive limitations." AR1599. On May 25, 2010, Carlos Martinez, PT, performed a Functional Capacities Evaluation on Anderson, which tested his range of motion, reflexes, strength, performance in static postures and positions, and repeated motions and positions.[12] AR1591-95. Martinez concluded that Anderson was unable to return to work in any position because his physical condition rendered him unable to tolerate even four hours of sedentary work. AR 1595.

On June 11, 2010, Anderson appealed Matrix's decision, and provided voluminous documentation to Reliance. AR401-64, 500-733. As part of the appeal, Anderson submitted "Supplemental Job Requirements," signed by himself, Milo, and "ISSO/Peer @ Apptis" David Bennet, describing Anderson's training of other employees and the physical demands thereof. AR1728-36.

---

[11] The letter was originally dated January 15, 2010, but was amended. *See* AR97.

[12] Martinez found that Anderson could sit for 40 minutes, but needed position changes, and stand for 15 minutes. AR1586.

On July 26, 2010, Reliance requested another IME and gave notice that it would use a 45 day extension to decide Anderson's claim.   AR63.   Through counsel, Anderson refused to submit to the IME, asserting that Reliance was trying to delay the process, there was no claim pending so Reliance had no right to an examination, and Ward's report was "worthless."   AR62.

Because of Anderson's refusal to undergo another examination, Reliance submitted Anderson's files for a paper peer review by Eric Kerstman, M.D., through its vendor MES Solutions ("MES").   AR398.   Kerstman stated that Anderson was suffering from chronic low back pain, but asserted that the treatment plan was not appropriate, as evidenced by Anderson's lack of improvement.   AR378-79.   Although his prognosis was poor, Anderson was capable of full-time sedentary work.   AR379-80.   Kerstman did not provide a basis for this finding, but he noted that psychiatric factors were not hindering Anderson's working ability.   AR380.

Following the submission of additional information by Anderson, Kerstman provided a second report.   See AR476. Kerstman's opinion did not change.   AR479.

On August 10, 2010, an administrative law judge at the Social Security Administration ("SSA") held a hearing on Anderson's application for SSD benefits.   AR305.   On October 22,

11

2010, Reliance sent a copy of its claim manual to Anderson's

counsel.[13]   AR499.

On December 23, 2012, the SSA issued a fully favorable

decision to Anderson.  AR302.  The SSA determined that he

suffered from, *inter alia*, post-traumatic stress disorder

("PTSD"); depressive disorder; "pain disorder associated with

both psychological factors and a general medical condition," and

a "cognitive disorder due to medical condition" rendering him

unable to return to his past relevant work.  AR306-08.

On January 20, 2011,[14] Reliance affirmed the decision and

determined that he was not entitled to benefits because he was

not Totally Disabled under the changed definition.  AR34-48.  In

affirming the termination of benefits, Reliance relied on Ward's

and Kerstman's reports.  AR39-45.  Reliance distinguished the

SSD award because of its reliance on PTSD and depression and

noted that the SSA did not have Ward's or Kerstman's reports.

AR47.  Reliance did not address any of Anderson's evidence

supporting his Total Disability in is affirmance letter.

---

[13] In the letter, Reliance stated that it had previously
disclosed the manual in response to a request by Anderson on
February 22, 2010.  AR499.

[14] The deadline for Reliance to decide the appeal had been
extended several times to allow Anderson's counsel to review
Kerstman's reports and submit additional documentation.  *See,
e.g.*, AR52.

D.   Litigation History

On May 5, 2011, Anderson filed suit seeking a declaration that he is entitled to benefits under the Plan, attorneys' fees, and penalties for the defendants' failure to produce plan documents.   ECF No. 1.   On June 9, 2011, Reliance counterclaimed for overpayment.   On January 5, 2012, then-Chief Magistrate Judge Paul W. Grimm granted limited discovery.   ECF No. 20; *see* ECF No. 28 (overruling objection).

On May 24, 2012, Anderson moved for summary judgment.   ECF No. 34.   The same day, he filed the supplemental record.[15]   ECF No. 33.   On June 19, 2012, the defendants cross-moved for summary judgment and opposed Anderson's motion.   ECF No. 41.   On July 2, 2012, Anderson filed his response and reply.   ECF No. 43.   On July 16, 2012, the defendants replied.   ECF No. 45.   On July 17, 2012, Anderson moved for leave to file a surreply.   ECF No. 47.   The same day, the defendants filed the administrative record, and Anderson filed Reliance's claim guidelines.   ECF Nos. 46, 48 (SEALED).

II.   Analysis

A.   Leave to File a Surreply

Anderson seeks permission to file a surreply, asserting that the defendants made new arguments in their reply.   ECF No. 47.   The defendants have not opposed the motion.

---

[15] *See infra* Part II.B.

Unless otherwise ordered by the Court, a party may not file a surreply.  Local Rule 105.2(a) (D. Md. 2012).  Leave to file a surreply may be granted when the movant otherwise would be unable to contest matters presented in the opposing party's reply.  *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd* 85 F. App'x 960 (4th Cir. 2004).

In their reply, the defendants for the first time provided additional details on the disputed supplemental record.  *See* ECF No. 34 at 3-4; *infra* Part II.B.  Anderson's surreply addresses this new information.  The motion will be granted.

B.   The Administrative Record

The defendants have filed an administrative record.[16]  *See* ECF No. 46.  Anderson has filed a supplemental record with documents he says are part of the record.[17]  *See* ECF No. 33.  Except in unusual circumstances, such as a gap in the administrative record concerning an actual conflict of interest,

---

[16] This record is numbered AR1-2186.

[17] This record is numbered SR1-1390.  The notice of filing of lengthy exhibit lists the administrative record as SR1-1188, and the defendants note the discrepancy.  *See* ECF Nos. 33 at 1, 45 at 3.  The final numbered page of the copy received by the Court is SR1390.  However, one segment was out of order making SR1188 the last page.  The Court's references to the supplemental record includes all 1390 pages.

the Court reviews Anderson's denial of benefits claim solely on the administrative record.[18]

Anderson asserts that the supplemental record is necessary because the defendants failed to file portions of the record that were before Reliance Standard when it decided Anderson's appeal. *See* ECF No. 33 at 1. The defendants concede that much of the supplemental record (SR8-1177) was before it and was inadvertently omitted from the administrative record; they assert, however, that the documents are irrelevant. *See* ECF No. 45 at 3-4.

The supplemental record was part of the administrative record. Much of the supplemental record bears Reliance's numbering for the appeal. *See* SR6-1177. The letters in SR1-SR5 are in the administrative record. *See* AR301, 322-325. The articles at SR1178-1216 are in the administrative record. *See* AR326-364. However, it does not appear that the documents at SR1217-1390 were in the appeal or otherwise part of the administrative record. Thus, to the extent it is not duplicative, the supplemental record--except for SR1217-1390-- will be considered part of the administrative record.

---

[18] *See Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 631 (4th Cir. 2010); *Patel v. United of Omaha Life Ins. Co.*, Civ. No. DKC-12-0880, 2012 WL 2370129, at *2-3 (D. Md. June 21, 2012).

C.   Cross Motions for Summary Judgment

1.   Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[19]  In considering the motion, the judge's function is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

---

[19] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment."  Fed. R. Civ. P. 56 advisory committee's note.

When cross motions for summary judgment are filed, "each

motion must be considered individually, and the facts relevant

to each must be reviewed in the light most favorable to the

nonmovant." *Mellen*, 327 F.3d at 363 (*citing Rossignol v.*

*Voohaar*, 316 F.3d 516, 523 (4th Cir. 2003)).

2.   Anderson's Motion

a.   Benefits Termination

The Court considers eight nonexclusive factors in reviewing

the reasonableness of a plan administrator's decision:

> (1) the language of the plan; (2) the purposes and goals of
> the plan; (3) the adequacy of the materials considered to
> make the decision and the degree to which they support it;
> (4) whether the fiduciary's interpretation was consistent
> with other provisions in the plan and with earlier
> interpretations of the plan; (5) whether the decisionmaking
> process was reasoned and principled; (6) whether the
> decision was consistent with the procedural and substantive
> requirements of ERISA; (7) any external standard relevant
> to the exercise of discretion; and (8) the fiduciary's
> motives and any conflict of interest it may have.

*Williams*, 609 F.3d at 630.   When, as here, the plan vests the

administrator with discretionary authority, the Court reviews

for an abuse of discretion.   *Id.* at 629-30; *see* AR16.   The

administrator's decision will be upheld if the "decision is the

result of a deliberate, principled reasoning process and if it

is supported by substantial evidence."   *Brogan v. Holland*, 105

F.3d 158, 161 (4th Cir. 1997) (internal quotation marks

omitted).   "Substantial evidence consists of less than a

preponderance but more than a scintilla of relevant evidence

17

that a reasoning mind would accept as sufficient to support a particular conclusion." *Whitley v. Hartford Life & Acc. Ins. Co.*, 262 F. App'x 546, 551 (4th Cir. 2008) (internal quotation marks omitted).

### i.  Conflict of Interest

Throughout his motion, Anderson asserts that Reliance, MES and MLS worked under a conflict of interest. *See, e.g.*, ECF No. 34-1 at 19-21.  However, Anderson has not presented a comprehensible argument about a conflict of interest *in this case*.  Instead, he cites depositions of doctors from cases in the Eastern District of Michigan, the Central District of California, and the Northern District of Illinois.  ECF No. 34-1 at 18, 21-22; AR539-64; SR1136-48.  None of the doctors in those cases examined Anderson.  Anderson has not given any explanation how those depositions are relevant or how MES or MLS are biased, other than their business of providing IMEs and peer reviews.[20] Further, it is Reliance's conflict of interest that is one of the factors in the abuse of discretion analysis, not the doctors'.[21]

------

[20] It is not an abuse of discretion to consider "trained physicians' opinions solely because they were selected, and presumably compensated, by" the insurer.  *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 88 (2d Cir. 2009).

[21] *See Abromitis v. Cont'l Cas. Co./CAN Ins. Cos.*, 114 F. App'x 57, 61 (4th Cir. 2004); *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 343 n.2 (4th Cir. 2000).

Similarly, Anderson asks the Court to apply the "sliding scale analysis" of *Ellis v. Metropolitan Life Insurance Co.*, 126 F.3d 228 (4th Cir. 1997). ECF No. 34-1. *Ellis*'s sliding scale abuse of discretion analysis is no longer good law. *See Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 358 (4th Cir. 2008. Instead, a conflict of interest is one of the abuse of discretion factors. *See Williams*, 609 F.3d at 630-31.

As insurer and administrator, Reliance has a structural conflict of interest. *See* AR16. However, Reliance's payment of benefits for almost three years and its IME and peer review referrals indicate that it was not inherently biased. *See Williams*, 609 F.3d at 632.

ii. Vocational Review

Anderson contends that Reliance relied on an improper vocational review when denying benefits. ECF No. 34-1 at 36-38. The defendants assert that this argument is inapplicable. ECF No. 41-1 at 26.

Anderson says that Reliance "never considered Mr. Anderson's real job duties" but rather relied on a generic description from the DOT. ECF No. 34-1 at 37-38.

A general description from the DOT may be applicable when it "involve[s] comparable duties but not necessarily every duty." *Gallagher v. Reliance Std. Life Ins. Co.*, 305 F.3d 264, 272 (2002). The job description provided by Apptis accords with

19

the Computer Security Coordinator description in the DOT.
*Compare* AR2047, *with* AR1999.  Anderson has not indicated how
these descriptions differ, but has provided a "supplemental
description" of his duties.  *See* AR1728-30.  This description
supplements--not contradicts--the tasks assigned in the DOT.
Although the DOT does not include *all* of Anderson's duties; this
is permissible under *Gallagher*.  *See Gallagher*, 305 F.3d at 272.

The Vocational Review was not improper because the DOT
description was used.  To the extent that Anderson asserts that
he had *more* job responsibilities than the description provided,
he would potentially be qualified for more, not fewer,
occupations.  The vocational review does not indicate an abuse
of discretion.

iii. Social Security Disability Benefits

Anderson asserts that Reliance improperly disregarded the
SSA's determination that he was disabled.  ECF No. 34-1 at 33-
35.  The defendants argue that Reliance did review and consider
the SSD award.  ECF No. 41-1.

In its denial of appeal letter, Reliance stated that it
reviewed the SSA's fully favorable decision; it also said that
although Anderson had some impairment, as recognized by the SSA,
it did not rise to the level of Total Disability.[22]  AR47.

---

[22] Reliance also noted, without further explanation, that
Anderson's entitlement to SSD and LTD "may be based upon a

Reliance does not appear to dispute the SSA finding of Anderson's impairment. *See id.* Rather, it emphasized that with the exclusion of mental or nervous disorders and self-reported conditions, as required by the policy, Anderson was able to perform *sedentary* work of *any* occupation. *Id.* The letter shows that Reliance considered the SSA's award. *See* AR46-47.

The SSA found that Anderson suffered from, *inter alia*, PTSD; depressive disorder; "pain disorder associated with both psychological factors and a general medical condition," and a "cognitive disorder due to medical condition." AR306. Finally, the SSA concluded that Anderson was "unable to perform *any past relevant work*." AR308 (emphasis added).

Accordingly, the standards applied by the SSA were different from those required by the plan, which generally excluded mental conditions and required inability to perform any occupation. *Compare* AR306-308, *with* AR12, 24. Because the standards differ, "there is no obligation to weigh the agency's disability determination more favorably than other evidence." *Gallagher*, 305 F.3d at 275 (internal quotation marks omitted). Reliance did not favorably consider the SSA's determination

---

different set of guidelines." AR46. It further stated that if the SSA had the results of the IME and peer review, it "may have reached a different conclusion." *Id.* Kerstman's reports were not available until after the SSD hearing. *See* AR50, 305, 381.

because of the differences in the available evidence and standards. *See* AR46-47.

#### iv. Reliance's Failure to Follow Its Guidelines

Anderson asserts that Reliance failed to follow its guidelines in handling his claim. ECF No. 34-1 at 35-36. The defendants assert that Reliance followed the Guidelines.[23] ECF No. 41-1 at 27-28.

Anderson asserts that, contrary to its manual, Reliance failed to utilize an EF1150 form for an internal referral. ECF No. 34-1 at 35-36. The administrative record belies this contention. AR172. Similarly, despite Anderson's contention, Reliance used referral forms for the IME and Peer Review, including the EF1322 form. *See* ECF No. 34-1 at 36, AR208, 388-90, 850-51.

Finally, Anderson asserts that Reliance failed to decide his appeal within the 45 days required by the manual and ERISA. ECF No. 34-1 at 36. Reliance's manual requires a determination within 45 days, unless notice is given of a 45-day extension.

---

[23] Reliance also argues that the claim guidelines are not properly before the Court. On July 17, 2012, Anderson filed, subject to a protective order, what purports to be Reliance's claim guidelines. ECF No. 48 (SEALED); *see* ECF No. 20. Like a conflict of interest, analysis of Reliance's compliance with guidelines requires documents outside if they are not contained in the administrative record. *See* ECF No. 20 at 5-9.

ECF No. 48 (SEALED) at 5.[24]   Anderson submitted his appeal on June 11, 2010.  AR401.  Reliance requested the second IME on July 26, 2010, within 45 days.[25]  AR63.

These indicate that Reliance complied with its guidelines and ERISA.  Further, Reliance and Anderson agreed to extend the deadline several additional times so that Anderson could review new reports produced during the appeal.  See AR54.  Accordingly, Anderson has not shown that Reliance failed to follow its guidelines.

                    v.    Failure to Demonstrate Improvement

Anderson asserts that Reliance improperly denied his claim by failing to find a change in condition.  ECF No. 34-1 at 29. The defendants contend that the termination of benefits was based on a change in the definition of disability.  ECF No. 41-1 at 18.

The administrative record reveals that the denial of benefits was not due to the change in definition of Total Disability.  On August 11, 2009, Matrix sent Anderson a letter stating that it found him totally disabled from performing any occupation for which he was qualified; accordingly benefits would continue until September 6, 2040, or until he no longer

---

[24] *Accord* 29 C.F.R. § 2560.503-1(i)(1)(i), (3)(i) (giving 45 day period and available extension).

[25] In the same letter, Reliance gave notice of a 45-day extension for completion and review of the IME.  AR64.

met the provisions of the policy.   AR206.   Anderson met the changed definition of Total Disability.

Courts view a termination of long term disability benefits "without sufficient new medical information to justify that decision . . . with significant skepticism."[26]   However, the Fourth Circuit has stated that the administrator need not show a change in condition to justify a termination of benefits.[27] Rather, the Fourth Circuit indicated that administrators may remedy benefits incorrectly granted.  *See Wilson*, 183 F. App'x at 292.

There is nothing in the administrative record indicating that Matrix made any mistake in granting Anderson benefits under the original or changed Total Disability definitions.   Rather, Matrix seems to have imposed arbitrary deadlines for reassessing Anderson's inability to work a sedentary occupation.  *See* AR124. Matrix indicated that Anderson's continued restrictions were based upon his numerous epidural injections.  *See id.*   However,

---

[26] *Thorpe v. Cont. Cas. Co.*, No. CIV.A. 91-5932, 2002 WL 31845876 at *4 (E.D. Pa. Dec. 18, 2002.  Courts differ about how to view substantial evidence of no disability; some require evidence of a change in condition, while others do not. *See Fifield v. HM Life Ins. Co.*, No. 11-cv-201-JL, 2012 WL 4499893, at *6-7 (D.N.H. Sept. 28, 2012) (collecting cases).

[27] *See Wilson v. Metro. Life Ins. Co.*, 183 F. App'x 286, 292 (4th Cir. 2006) (per curiam) (*citing Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 274 (5th Cir. 2005)); *see also Cosey v. Prudential Ins. Co. of Am.*, No. 1:11-cv-00121, 2012 WL 4581454, at *8 (M.D.N.C. Sept. 30, 2012) (discussing *Wilson*)

the September epidural injection was not Anderson's last one, and he continued to receive them even after his LTD benefits were terminated. *See, e.g.*, AR2097.

Further, there is nothing indicating that Matrix's decisions to grant LTD benefits or continue them after the changed definition were incorrect. Rather, Matrix appeared satisfied that Anderson met the changed definition, if only for a few months. *See* AR120. Further, there is no evidence why Anderson's restrictions were valid only until December 31, 2009. *Cf.* AR124.

Because there is no indication that "a review of available information show[ed] that the initial grant of benefits was contrary to the terms of the plan," or that Anderson improved, the termination indicates an abuse of discretion. *Wilson v. Metro. Life Ins. Co.*, 183 F. App'x at 292

> vi. No Substantial Evidence to Demonstrate
> Ability to Return to Work

Anderson asserts that Reliance's finding that he was not Totally Disabled was not supported by substantial evidence. ECF No. 34-1 at 31. The defendants assert that Ward's and Kerstman's reports were substantial evidence. *See* ECF No. 41-1 at 20.

Ward's opinion that Anderson was capable of very heavy work starkly contrasts with every other opinion in the administrative

25

record.  *See* AR824.  Further, there is evidence in the record
significantly undermining Ward's credibility.  Ward stated that
he examined Anderson from 1:30-2:30, and examined Anderson's
medical records for an hour and a half before and half an hour
after the examination.  AR821.  Matrix's surveillance contractor
indicated that Anderson signed in for his examination at 12:40
p.m., was in the examination room by 12:59 p.m., and left the
office at 1:43.  AR178-79.  Milo stated that the examination
occurred from 1:10-1:40.  AR1719.  Milo also stated that Ward
"made it a specific point to tell us he had <u>NOT</u> read any of
[Anderson's] medical records," and Anderson had significant
difficulty during the physical exam. AR1719-20.  Ward did not
mention any difficulties.  AR820.  These allegations of
misconduct by Ward, which were not addressed by Reliance, make
his assessment an unreliable basis for the termination decision.
*See Davis v. Hartford Life & Accident Ins. Co.*, C/A No. 8:10-cv-
03078-GRA, 2012 WL 1565646, at *9 (D.S.C. May 2, 2012).

Kerstman's report is far different from Ward's and is much
closer to the rest of the medical evidence.  However, Kerstman
opined that Anderson was capable of sedentary work without
providing a basis for this conclusion.  AR491.  He also stated
that Anderson's current treatment plan was not reasonable and
appropriate because it was not helping him improve.  AR489-90.
However, the only suggestion that Kerstman gave was physical

therapy. AR491.  Kerstman also disagreed with Ward's conclusion that Anderson's medication was impairing him.  *See id.*

In contrast to Ward's and Kerstman's reports, Reliance had evidence from Anderson's doctors that showed he was still suffering from pain, which had not significantly improved after numerous treatments.  *See, e.g.*, AR 2112.  It also had reports from Martinez, Cohen, and Parente that Anderson was unable to return to work.

The only credible evidence that Reliance had favoring terminating Anderson's benefits was Kerstman's peer review. Although it is not unreasonable for an insurer to rely on paper peer reviews,[28] Kerstman's report offered little information

---

[28] *See Hufford v. Harris Corp.*, 322 F. Supp. 2d 1345, 1359 (M.D. Fla. 2004).

Reliance also asserts that Anderson's refusal to attend a second IME could be fatal to his claim.  ECF No. 41-1 at 22-23. However, the cases cited for this proposition are all distinguishable from these facts.  *See Wildrick v. N. River Ins. Co.*, 75 F.3d 432, 436 (8th Cir. 1996) (failure to cooperate in insurance defense); *Bari v. Con'tl Cas. Co.*, No. 02 Civ. 5628(CBM), 2004 WL 1124685, at *11 (S.D.N.Y. May 20, 2004) (plan specifically provided for termination of benefits if claimant refused to undergo examination); *Acierno v. First Unum Life Ins. Co.*, No. 98 CV 3885 SJ, 2002 WL 1208616, at *2 (E.D.N.Y. Mar. 31, 2002) (claim denied for failure to attend IME when claimant objected to the choice of the physician); *Bali v. Blue Cross & Blue Shield Ass'n*, 683 F. Supp. 1220, 1224 (N.D. Ill. 1988), *aff'd* 873 F.2d 1043 (7th Cir. 1989) (claimant failed to provide objective medical evidence on request going to disputed medical condition).  Here, Anderson's failure to attend the IME was not a basis for Reliance's denial of the appeal; rather it used his refusal as justification for the paper peer review.  *Cf.* AR39. Accordingly, Anderson's refusal is not a factor in the abuse of discretion analysis.

about Anderson's condition other than its bare conclusion that he was capable of sedentary work. *See* AR491. This is not substantial evidence for Reliance's position. *See White v. Sun Life Assurance of Can.*, 488 F.3d 240, 256 (4th Cir. 2007).

In its affirmance of the termination, Reliance also indicated that Anderson's disability was caused by his PTSD and depression. *See* AR45. However, Anderson's medical records, and Matrix's notes, indicate that his depression was secondary to pain in his disability. *See, e.g.*, AR123, 201. Similarly, Kerstman indicated that psychiatric factors were not a cause for Anderson to be unable to work, *see* AR491, and Ward did not discuss them at all, *see* AR820-21 (noting Scholle's records).

Finally, Reliance's denial of the appeal did not address Martinez's, Cohen's, or Parente's findings that Anderson was unable to work. Martinez undertook significant testing and found that Anderson was unable to work a full-time position. *See* AR1599. Further, Parente found that Anderson was suffering from pain and cognitive disorders[29] contributing to his disability. *See* AR1599. Reliance's "failure to seriously engage in a discussion" of Anderson's favorable evidence

---

[29] Although Reliance did not address the cognitive disorders in its termination, the Court notes that the attention problems and other cognitive disorders from the accident are different from the mental disorders excluded from the definition of total disability in the plan. *See* AR24. Accordingly, they should not have served as a basis for the denial of benefits.

indicates an abuse of discretion.  *White v. Eaton Corp. Short Term Disability Plan*, 308 F. App'x 713, 719 (4th Cir. 2009).

Given Ward's unreliability, which should have been apparent to Reliance from the record, the only evidence supporting its denial of benefits was Kerstman's conclusionary determination that Anderson was able to work at a sedentary level.  There is significant contrary evidence.  Although there may have been a scintilla of some evidence that Anderson was not Totally Disabled, it was not substantial.

Considering all the applicable factors, Reliance abused its discretion in terminating Anderson's LTD benefits, and Anderson is entitled to the reinstatement of benefits.  Summary judgment will be granted on this claim.

> b.    Failure to Produce Claim Guidelines

Anderson asserts that Reliance and the Plan are liable for penalties under 29 U.S.C. § 1132(c) for failure to produce its claim guidelines.  ECF No. 34-1 at 38-44.  The defendants assert that the documents sought by Anderson are not subject to the penalties.  ECF No. 41-1 at 29.

In the Fourth Circuit, the only documents subject to penalties under § 1132(c) are those directly discussed in ERISA. *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 653-54 (4th Cir. 1996).  ERISA requires disclosure of "the latest updated summary, plan description, and the latest annual report, any

terminal report, the bargaining agreement, trust agreement,
contract, or other instruments under which the plan is
established or operated." 29 U.S.C. § 1024(b)(4). The Fourth
Circuit has interpreted this provision to include "only formal
or legal documents under which a plan is set up or managed."
*Faircloth*, 91 F.3d at 654. The claim guidelines are not the
requisite formal or legal documents.[30] Accordingly, summary
judgment will be denied on this claim. Anderson's motion will
be granted in part and denied in part.[31]

       3.   The Defendants' Motion for Summary Judgment

       a.   Benefits Termination

When the administrator is granted discretion, as here, the
decision to terminate disability benefits will be upheld absent
an abuse of discretion. *Williams*, 609 F.3d at 629-30.

The defendants assert that they are entitled to summary
judgment because Reliance's denial of benefits was reasonable
and supported by substantial evidence. ECF No. 41-1 at 20. The

---

[30] In his argument that this Court should consider the guidelines
documents that must be disclosed under § 1132(c), Anderson
relies on *Bartling v. Freuhauf Corp.*, 29 F.3d 1062 (6th Cir.
1994), which the Fourth Circuit has expressly declined to
follow. *See Faircloth*, 91 F.3d at 653-54; ECF No. 34-1 at 41.

[31] Anderson requests attorneys' fees as part of his relief. ECF
No. 34-1 at 44. Under ERISA, the Court may award reasonable
attorneys fees to any party. 29 U.S.C. § 1132(g)(1). Anderson
may seek attorneys' fees by filing a properly documented motion.

basis for its decision was Ward's and Kerstman's reports.   AR39-45.

Ward's report is unreliable.   The administrative record undermines Ward's statements about the length of the examination and the effect on Anderson.   *See* AR178-79, 821, 1719-20. Further, Ward's conclusion that Anderson was capable of heavy work is very different from all other evidence in the record. *See* AR824.   Reliance's decision did not address any of these issues.

Kerstman's opinion is in greater accord with the rest of the medical evidence.   However, he provided no reasons for his conclusion that Anderson was capable of sedentary work.   *See* AR491.   Further, Reliance did not address evidence from Anderson's doctors that he still suffered from pain which had not significantly improved, or reports from Martinez, Cohen, and Parente that Anderson was unable to return to work.

Reliance's "failure to seriously engage in a discussion" of Anderson's favorable evidence indicates an abuse of discretion. *White*, 308 F. App'x at 719.   Although there was a scintilla of evidence that Anderson was not Totally Disabled, the administrative record lacks substantial evidence for that

conclusion.[32]  *See Supra* Part II.C.2.vi.  Accordingly, summary judgment will be denied on this claim.

>    b.    Failure to Produce Claim Guidelines

The defendants assert that they are not liable for failure to disclose plan documents because the claim guideline documents requested by Anderson are not included within the statutory penalty.  ECF No. 41-1 at 29-30.

In the Fourth Circuit, the only documents that are subject to the statutory penalties are those directly mentioned in ERISA.  *Faircloth*, 91 F.3d at 653-54.  These are the "formal or legal documents under which a plan is set up or managed."  *Id.* at 654.  Because the claim guidelines are not such formal or legal documents, the defendants are entitled to summary judgment on this claim.

>    c.    Repayment of Social Security Benefits

Reliance asserts that it is entitled to reimbursement from Anderson of his SSD award to offset its payments of LTD benefits.  ECF No. 41-1 at 30.  Anderson contends that the equitable relief sought by Reliance is unsupported by relevant law.  ECF No. 43 at 19-20.

---

[32] Reliance also contends that Anderson's refusal to attend a second IME could be fatal to his claim.  ECF No. 41-1 at 22-23. However, Reliance did not deny the appeal because of this refusal; rather it ordered the paper peer review.  *Cf.* AR39. Anderson's refusal does not support Reliance's denial.

Under ERISA, fiduciaries may bring an action for equitable relief to enforce the terms of the plan. *See* 29 U.S.C. § 1132(a)(3). Here, the Plan requires repayment of any SSD award for the same disability as paid by Reliance. AR20. Anderson opposes repayment because Reliance is seeking legal, not equitable damages. *See* ECF No. 43 at 19-20.

Section 1132(a)(3) authorizes only equitable relief, not money damages. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993). The most recent Supreme Court decision interpreting a fiduciary's recovery under this section is *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006). *Sereboff* held that strict tracing is not required for funds subject to an equitable lien by agreement. *Id.* at 365.

There have been no Fourth Circuit cases concerning recovery of overpayments under ERISA after *Sereboff*. *J.J. Crewe & Son, Inc. Profit Sharing Plan v. Talbot*, Civ. No. ELH-11-2871, 2012 WL 1994778, at *7 (D. Md. June 1, 2012). Several circuits have found that under *Sereboff*, "overpayments to beneficiaries resulting from a participant's receipt of social security benefits constitute a particular share of a specific fund to which [the insurer] is entitled," permitting an equitable lien.[33]

---

[33] *Bowling v. PBG Long-Term Disability Plan*, 584 F. Supp. 2d 797, 813 (D. Md. 2008) (*citing Gutta v. Std. Select Ins. Plans*, 530 F.3d 614, 621 (7th Cir. 2008); *Gilchrest v. Unum Life Ins. Co. of Am.*, 255 F. App'x 38, 45 (6th Cir. 2007); *Dillard's Inc. v.*

The courts of appeal differ about whether *Sereboff* requires that the overpaid funds be in the claimant's possession for imposition of the equitable lien. *See Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1094-95 (9th Cir. 2012), *cert. denied sub nom. First Unum Life Ins. Co. v. Bilyeu*, 2013 WL 598478 (Feb. 19, 2013). (collecting cases). Several courts of appeal have held that the beneficiary need no longer possess the specifically identified funds.[34] The Ninth Circuit has taken a different approach; it has constructed a three-part test for recovery of an equitable lien by agreement under *Sereboff*, including a requirement that the funds be within the possession and control of the beneficiary. *See Bilyeu*, 683 F.3d at 1093-97 (*citing Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002). Courts in this District do not appear to have taken either side of the split.[35]

---

*Liberty Life Assurance Co. of Bos.*, 456 F.3d 894, 901 (8th Cir. 2006)). But see *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1093-94 (9th Cir. 2012), *cert. denied sub nom. First Unum Life Ins. Co. v. Bilyeu*, 2013 WL 598478 (Feb. 19, 2013). (questioning, but not deciding, whether Social Security Disability payments are a "fund" under *Sereboff*).

[34] *See, e.g., Funk v. Cigna Corp. Ins.*, 648 F.3d 182, 194 & n.14 (3d Cir. 2011); *Cusson v. Liberty Life Assurance Co. of Bos.*, 592 F.3d 215, 231 (1st Cir. 2010); *Longaberger Co. v. Kolt*, 586 F.3d 459, 466-69 (6th Cir. 2009); *Gutta*, 530 F.3d at 620-21.

[35] *J.J. Crewe* did not resolve this issue because the ruling was on a motion to dismiss; the claimant's contention that he was not in possession of the funds was irrelevant to his motion to dismiss the plaintiff's claim to equitable relief. *See J.J.*

It does not appear than any court outside the Ninth Circuit has followed *Bilyeu*.[36]  Further, the facts of *Knudson*, on which *Bilyeu* relies, are distinguishable from the receipt of SSD benefits.  *See Bilyeu*, 683 F.3d at 1095-96.  In *Knudson*, the claimant never actually received the benefits from her tort settlement; instead the money was paid into a Special Needs Trust or to her attorney.  *See Knudson*, 534 U.S. at 208.  The Court will follow the circuits holding that SSD benefits, even if no longer in the claimant's possession, are recoverable by the fiduciary under "the familiar rule of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing."  *Sereboff*, 547 U.S. at 363-64 (internal quotation marks omitted).[37]

---

*Crewe*, 2012 WL 1994778 at *9.  *Bowling* did not address this potential issue: the only mention of the claimant holding any funds is a quotation of *Knudson* without an analysis of the facts of the case.  *See Bowling*, 584 F. Supp. 2d at 814.  In *Bureau of Nat'l Affairs, Inc. v. Chase*, Civ. No. ELH-11-1641, 2012 WL 3670440 (D. Md. Aug. 24, 2012), there was no dispute that the claimant still possessed the subject money of a tort settlement.  *See id.* at *10.

[36] *Int'l Longshore & Warehouse Union-Pacific Maritime Ass'n Welfare Plan Bd. of Trs. v. South Gate Ambulatory Surgery Center, LLC*, No. C 11-01215 WHA, 2012 WL 4364567 (N.D. Cal. Sept. 24, 2012), appears to be the only reported decision following the *Bilyeu* framework.

[37] *See also Bilyeu*, 683 F.3d at 1099 (Rawlinson, J., dissenting) (describing the circuit split as "unwarranted").

Here, the Plan calls for the LTD benefits to be offset by SSD benefits; if there is an overpayment, the claimant is required to repay.  AR20.  Anderson promised to reimburse Reliance for the amount of the SSD award.  AR1207.  Under *Sereboff*, Reliance has a constructive lien against the SSD funds, even if Anderson has dissipated the funds.  *See Gutta*, 530 F.3d at 621.

In the cross-motion, Reliance asserts that it is entitled to $56,141.11.  ECF No. 41-1.  However, there is no evidence before the Court of the amount of Anderson's SSD award or whether he has repaid any moneys due Reliance.  Accordingly, the Court will grant summary judgment on the existence of the lien, but not its amount.[38]  Reliance's motion will be granted in part and denied in part.

III. Conclusion

For the reasons stated above, Anderson's motion to file a surreply will be granted.  His and the defendants' motion for summary judgment will be granted in part and denied in part.


_____3/21/13_____
Date

_____
William D. Quarles, Jr.
United States District Judge

---

[38] Should the parties need to reopen discovery, they should file an appropriate motion within 30 days.